IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNDORA ELIZABETH CAMPBELL,<br><br>      Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security,<br><br>      Defendant. | No. 2:16-cv-01515-AJS-RCM<br><br>Judge Arthur J. Schwab<br>Magistrate Judge Robert C. Mitchell<br><br>Docket Nos. 13 & 17 |

## REPORT AND RECOMMENDATION

**I.**    **Recommendation**

It is respectfully recommended that the Court grant Commissioner's motion for summary judgment (Docket No. 17), deny plaintiff's motion for summary judgment (Docket No. 13), and affirm the March 12, 2015, decision below (R. 18) that plaintiff is not disabled.

**II.**    **Report**

     **A.**    **Review of Record and Legal Standards**

Presently before the Court for disposition are cross motions for summary judgment. Lyndora Elizabeth Campbell ("plaintiff") protectively filed an application for supplemental security income ("SSI") on March 12, 2013, under section 1614(a)(3)(A) of the Social Security Act ("Act"). (R. 18.) Plaintiff's application was initially denied in early November 2013. (R. 74.) She requested a hearing about a week later. (R. 78.) In late February 2015, plaintiff attended a hearing held by Administrative Law Judge William J. Bezego ("ALJ"). (R. 23.) Impartial vocational expert Dr. William H. Reed ("VE") also attended the hearing. (R. 108, 110.) The ALJ determined that plaintiff was not disabled. (R. 18.) Near the end of March 2015, plaintiff requested a review of the ALJ's decision. (R. 7.) The Appeals Council denied

plaintiff's request for review at the beginning of August 2016. (R. 1.) Plaintiff filed this action on September 30, 2016, under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's decision denying her disability claim. (Docket No. 1.)

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff did not sustain her burden of demonstrating that she was disabled within the meaning of the Act. *Richardson v. Perales*, 402 U.S. 389 (1971); *Adorno v. Shalala*, 40 F.3d 43 (3d Cir. 1994).

42 U.S.C. § 405(g) provides that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)." *Richardson*, 402 U.S. at 401; *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

Plaintiff appeared with counsel at the hearing held on February 24, 2015. (R. 23.) She was born on June 8, 1973, and was forty-one years old on the hearing date. (R. 17.) Plaintiff is a high school graduate with the ability to read, write, and perform simple math. (R. 26.) Her only work experience concluded in 1995; she was a store clerk. (R. 26–27.) She listed her constant back pain and numbness, as well as weakness in her legs as her greatest impediments to working. (R. 27.) On a scale of one to ten, she rated her pain as a six even considering the relief she gains from taking Percocet and Elavil. (R. 27.) Her medications sometimes cause dizziness,

2

lightheadedness, and nausea. (R. 27–28.) She attributes these side effects to Percocet. (R. 28.) She told the ALJ that she took Percocet earlier on the hearing date but was not experiencing its side effects at the hearing. (R. 28.)

Plaintiff described the circumstances in which her back pain occurred. Bending, sitting, standing, and walking all accentuate her back pain. (R. 28.) After walking for ten minutes, her legs begin feeling numb. (R. 28.) She added that she could only sit in a chair for about ten minutes before standing up or repositioning herself. (R. 29.) She declined any difficulty with fine motor skills like buttoning clothing, writing, or using utensils. (R. 29.) The heaviest object she testified she could lift with both hands is something "about five pounds." (R. 29.)

Plaintiff also detailed how she treats her back pain (besides medication). She confirmed that she neither had any back surgeries nor received a recommendation for one. (R. 29.) She sometimes uses ice, heat, and exercises her doctor recommends to decrease her pain. (R. 29.) She also uses a cane about every two or three weeks; Dr. Vandrak ("Vandrak") prescribed the cane. (R. 32.) When she has back spasms, her legs "go completely numb" and she lays down on the floor with a pillow under her back for relief. (R. 33.) She also received injections for her back, but provided confusing testimony on the number of injections. She noted she had one injection two months before the hearing. (R. 29.) But later in the hearing, she said she had eight or nine injections for her back in the last two years. (R. 34.) As to the timing of those injections, she told the ALJ that she had one injection at Vandrak's office and one injection at Jameson Hospital, with seven more within the "year before last[] . . . [a]nd over the last four years." (R. 34.)

Plaintiff discussed her living arrangement and routine with the ALJ. She lives with her fiancé and four of her kids, aged eighteen, sixteen, fourteen, and twelve. (R. 30.) Her fiancé is

3

physically disabled. (R. 31.) Although she often struggles with sleep, she wakes up at 6:00 A.M. (R. 31.) She washes and dresses herself and makes something to eat. (R. 31.) She added that her fiancé and kids do most of the cooking, though she can make "small plate meals." (R. 31.) Her kids help with the laundry by carrying it on steps and doing "most of the heavy lifting." (R. 31.) Plaintiff's chores include washing dishes, folding clothes, and trying to sweep the floor. (R. 32.) While she can wash dishes, "[i]f there's a lot of them, I can't stand there that long, so I have to keep taking breaks." (R. 33.) She is able to go to the store but only drives about twice a month. (R. 32.)

Plaintiff's attorney sought her testimony regarding mental-health issues. Her family doctor began treating her for "mood issues" in 1995. (R. 34.) Her recent treatment included an increase in her Xanax prescription and an additional prescription for Celexa. (R. 34–35.) She began taking Xanax ten years before the hearing. (R. 35.) She never received a referral to a mental-health specialist. (R. 35.) Her anxiety is "well controlled" by Xanax but she also received the Celexa prescription three months before the hearing because she experienced "a lot of anxiety" due to back pain, numb legs, lack of sleep, trying to do more activities, and her disappointment in heaping more responsibility on her children. (R. 35–36.) Her children participate in school activities such as track meets and award ceremonies but she is unable to sit through them. (R. 36.)

The hearing then pivoted to plaintiff's work history and testimony from the VE. The ALJ found that plaintiff did not have a relevant work history. (R. 37.) Then, the ALJ asked the VE the following hypothetical:

> assume an individual of the claimant's age, education and work experience, and assume the following residual functional capacity: [l]ight work, which is low in stress, and by low in stress, I mean, work requiring only routine repetitive tasks, only occasional

4

> judgment, decision making and workplace changes. Only
> occasional interaction with the public, coworkers and supervisors .
> . . would there be jobs that could be performed?

(R. 38.) The VE responded that plaintiff could perform jobs requiring light, unskilled work. (R. 38.) The VE provided three examples: stock marker (excluding those working at the front of the store); housekeeping cleaners (excluding those working in private homes); and light, unskilled packers. (R. 38.) Next, the ALJ added a limitation to his hypothetical: "the person would be off task at least 20 percent of the workday." (R. 38.) The ALJ responded that "[t]here would be no jobs for that individual." (R. 38.) The hearing ended. (R. 39.)

The issue before the Court is whether there is substantial evidence supporting the Commissioner's finding that plaintiff was not disabled as of March 12, 2013. The term "disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months
> . . . .

42 U.S.C. § 423(d)(2)(A) provides the requirements for a disability determination:

> An individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would he hired if he applied
> for work. For purposes of the preceding sentence . . . "work which
> exists in the national economy" means work which exists in
> significant numbers either in the region where such individual lives
> or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. § 416(i)(2)(A). While some regard these provisions as "very harsh," the courts must follow them. *NLRB v. Staiman Bros.*, 466 F.2d 564 (3d Cir. 1972); *Choratch v. Finch*, 438 F.2d 342 (3d Cir. 1971); *Woods v. Finch*, 428 F.2d 469 (3d Cir. 1970). It must be determined whether the record evidence supports the Commissioner's conclusion that plaintiff was not disabled within the meaning of the Act.

Plaintiff's medical record indicates chronic back pain stemming from objective causes. A January 24, 2011, MRI exam showed L5-S1 disc-space narrowing with mild endplate marrow edema, moderate bilateral L5-S1 neural foraminal narrowing, and diffuse disc bulging at L5-S1. (R. 183.) Vandrak examined plaintiff on April 1, 2011, and noted that she had weakness in her legs with a strength deficit of 4/5 as well as diminished reflexes and sensation. (R. 184.) Vandrak again examined plaintiff on November 6, 2012, and noted that she had spasms and limitations with forward flexion. (R. 262.) She did not tolerate a straight leg raise exercise and had a strength deficit of 4/5. Vandrak wrote that plaintiff's "use of Percocet provide[d] manageable pain levels." (R. 262.) On May 21, 2013, plaintiff presented to the Jameson Hospital emergency room with back pain. (R. 266.) The pain occurred in her lower back and radiated down her legs; she rated the pain as a nine out of ten. (R. 271.) Her treatment included Medrol and Dilaudid. (R. 272.) Both medications decreased her pain. (R. 272.) She received Flexeril and a Medrol dose pak to alleviate her symptoms. (R. 269.) Plaintiff appeared at Vandrak's office for another examination on September 17, 2013. (R. 282.) Her symptoms deteriorated since her last appointment (especially her right leg); she had a positive straight leg raise and spasm in the lower back. (R. 282.) Vandrak noted that he could justify giving plaintiff more pain medication but that she "does not want to go this route." (R. 282.) He also recounted

that a neurosurgeon determined plaintiff was not a surgery candidate. (R. 282.) Vandrak concluded that her symptoms would worsen due to nerve root damage and decided to order another MRI for her. (R. 282.) This MRI, which occurred on October 7, 2013, showed: no compression fractures or acute marrow edema; discogenic degenerative disease at L5-S1 and minimally at L4-5; a minor disc bulge at L4-5 with small left lateral disc protrusion; a new mild asymmetric left foraminal stenosis at L4-5; broad-based posterior disc/osteophyte complex at L5-S1 without focal disc herniation or measureable central spinal stenosis; and persistent mild bilateral neural foraminal stenosis without significant change. (R. 285.) Vandrak felt that the MRI results confirmed plaintiff's condition was worsening. (R. 339.) A December 13, 2013, appointment with Vandrak showed plaintiff had lumbar pain and tenderness with distal muscle weakness. (R. 339.)

Dr. Hany Rezk ("Rezk") evaluated plaintiff for disability on October 23, 2013. (R. 288.) Rezk listed plaintiff's daily prescriptions as Rantidine, atenolol, Xanax, ibuprofen, Elavil, Percocet, Soma, and Ambien. (R. 289.) Rezk examined plaintiff and found tender areas on both sides of the lumbar spine. (R. 290.) Plaintiff showed positive leg raise tests at sixty degrees while lying flat and ninety degrees when sitting up. (R. 290.) Neurologically, Rezk wrote:

> she has normal power and sensation. She has negative Babinski sign. There is no hyperflexia. There is no muscle atrophy. The patient is able to get on and off examination table and chair without support. She has normal gait. She is able to walk on toes and heels. She is able to squat and arise from the squatting.

(R. 290.) Rezk also observed the disc bulge in plaintiff's MRI from October 15, 2013. (R. 290.) Rezk concluded that plaintiff had low back pain with degenerative changes, depression, hypertension, and no signs of radiculopathy. (R. 290.)

Rezk then evaluated plaintiff's ability to complete work activities. Rezk, on a checkbox form, indicated that plaintiff could lift and carry items up to five pounds occasionally. (R. 292.)

7

Rezk then checked boxes showing that plaintiff could sit for two hours at once, stand for one hour at once, and walk for fifteen minutes at once. (R. 293.) Rezk marked other boxes showing that plaintiff could sit for six hours, stand for two hours, and walk for thirty minutes in an eight-hour day. (R. 293.) Plaintiff, according to Rezk, could reach, handle, finger, feel, and push or pull with both of her hands frequently and could operate foot controls with either hand occasionally. (R. 294.) Rezk checked other boxes showing plaintiff could never climb ladders or scaffolds but could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (R. 295.) For the most part, plaintiff had full ranges of motion. (R. 299–300.) However, her forward flexion was eighty out of one-hundred degrees on both hips and her spinal flexion-extension was eighty out of ninety degrees. (R. 300.)

Plaintiff's medical record contains some of her concerns regarding mental health. A medical record dated October 10, 2013, included a note by Dr. Frank Melidona that plaintiff was stressed due to having five teens at home. (R. 326.) She complained to Dr. Melidona on December 11, 2014, that she cries very easily for no reason and attributed that to depression. (R. 319.) A January 9, 2015, examination at Jameson Orthopedics indicated that plaintiff was "oriented to person, place, and time." (R. 350.)

An examination by Vandrak of plaintiff on September 30, 2014, showed that she had limitation with her lumbar range of motion, lumbar radiculopathy with weakness in her right lower extremity. (R. 342.) Vandrak conducted another examination on December 22, 2014. (R. 338.) Vandrak noted plaintiff had "[a]symmetry spasm pain in the SI joint . . . radiculopathy in the lower extremity with weakness straight leg raising test." (R. 338.) She needed some assistance with positioning on the exam table. (R. 338.) Vandrak suspected that plaintiff had arthritis in the cervical spine due to her report of numbness and tingling in her upper extremity.

(R. 338.) However, a cervical spine scan on January 15, 2015, showed "normal vertebral body height, alignment, and disc spacing." (R. 337.) Her "posterior elements were normal in appearance." (R. 337.)

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974). As the court stated in *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In *Good v. Weinberger*, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the court stated:

> *Bittel* seeks to help those claimants with cases that so often fall within the spirit—but not the letter—of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§ 404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the ALJ must first decide whether plaintiff is engaging in substantial gainful activity. If not, then the severity of plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do her past relevant work. If not, then her residual functional capacity ("RFC") must be ascertained, considering all the medical evidence in the file. The finding of RFC is the key to the

9

remainder of findings, including whether plaintiff can resume any past relevant work. If not, the ALJ must assess whether plaintiff can perform any work corresponding with her RFC in the national economy. At that stage, the Commissioner has a burden going forward to provide evidence of jobs in the national economy that would be suitable for plaintiff.

The ALJ followed the five-step method for analyzing disability claims. He first found that plaintiff did not engage in substantial gainful activity since she applied for SSI on March 12, 2013. (R. 13.) Second, he determined that plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, hypertension, hyperlipidemia, and affective disorder." (R. 13.) Third, none of plaintiff's impairments or combination of impairments met or medically equaled the severity of an impairment in the listings. (R. 13.) The ALJ then determined that plaintiff's RFC allows her "to perform light work as defined in 20 CFR 416.967(b) except that she is limited to work which is low in stress, defined here as work: requiring only routine, repetitive tasks; only occasional judgment, decisionmaking, and workplace changes; and only occasional interaction with the public, coworkers, and supervisors." (R. 15.) He explained that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," which included back pain and numbness and weakness in plaintiff's right lower extremity, her testimony that she could only stand, walk, or sit for ten minutes at a time and lift about five pounds. (R. 15.) He also recounted plaintiff's testimony that she has back spasms that sometimes force her to lie down and takes prescription medication for anxiety. (R. 15.) The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 15.)

The ALJ explained his reasoning for discounting plaintiff's credibility. He highlighted that plaintiff only considered her back pain as a six out of ten, indicating moderate severity.

10

(R. 16.) She never had spinal surgery and medical imaging only showed degenerative changes in her lumbar spine. (R. 16.) His review of the record showed no "severe sensor, motor, or reflex loss" and that plaintiff did not receive formal physical therapy even though she had medical insurance. (R. 16.) He also mentioned that plaintiff could care for her personal hygiene, perform household chores, drive, and make simple meals. (R. 16.) He acknowledged plaintiff's worsening spinal problems by limiting plaintiff "to work at the light exertional level to account for any limitation that could reasonably be expected to arise as a result of . . . [her] back impairment." (R. 16.) Her record did not show "current ongoing treatment" for hypertension and hyperlipidemia or "significantly limiting symptoms" caused by those conditions. (R. 16.) After acknowledging plaintiff's complaint that she cries very easily for no reason and her prescription for an antidepressant, he highlighted her hearing testimony that her symptoms were well controlled with medication and that she never had a referral for sought professional mental health treatment. (R. 16.) He then wrote "out of an abundance of caution, the undersigned has found claimant's affective disorder to be severe and appropriate limitations have been added to the residual functional capacity assessment adopted in this decision." (R. 16.)

The ALJ concluded his RFC determinations by explaining why he ascribed greater weight to the state agency physician's opinion instead of the opinion of physical consultative examiner Rezk. The Third Circuit requires ALJs to give "[t]reating physicians' reports . . . great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); 20 C.F.R. § 404.1527(d)(2) (treating physician opinions should be given controlling weight when well supported by medical evidence and consistent with other substantial record evidence). ALJs

11

"may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1984)). Form documents containing boxes to check and blanks to fill "are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The ALJ gave minimal weight to Rezk's opinion because "the limitations [he] found . . . are apparently based on face value acceptance of claimant's subjective complaints rather than on any objective findings." (R. 17.) The ALJ assigned great weight to the state agency physician's opinion because "it is supported by the preponderance of the evidence as a whole and is not incongruous with" the ALJ's RFC assessment. (R. 17.) He found plaintiff's affective disorder to be a severe impairment, in contrast to the state agency physician's opinion. (R. 17.)

Moving to the fourth step of the disability analysis, the ALJ found that plaintiff had no past relevant work, obviating the need to determine whether she could resume any past work. (R. 17.) He then determined in step five that the VE correctly determined that plaintiff could work in the national economy as a stock marker, housekeeper/cleaner, or packer when considering her age, education, work experience, and RFC. (R. 18.) The ALJ concluded that plaintiff was not disabled. (R. 18.)

**B.     Issues**

Plaintiff presents three issues on appeal. First, the ALJ's RFC determination and hypothetical did not adequately reflect her moderate difficulties in concentration, persistence, and pace. (Docket No. 14 at 6.) Second, the ALJ did not adequately apply required factors to determine her credibility. (Docket No. 14 at 8.) Third, substantial evidence does not support the ALJ's decision ascribing greater weight to the state agency physician's opinion than the consultative examining physician's opinion. (Docket No. 14 at 12.)

1. *ALJ's RFC Determination Incorporated Plaintiff's Moderate Difficulties in Task Completion*

The ALJ properly considered plaintiff's moderate difficulties in concentration, persistence, and pace when formulating her RFC. "The Third Circuit Court of Appeals has determined that a limitation to simple, routine tasks sufficiently accounts for a claimant's moderate limitations in concentration, persistence and pace." *Polardino v. Colvin*, No. 12-806, 2013 WL 4498981, at *6–7 (W.D. Pa. Aug. 19, 2013) (citing *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008); *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008)). The hypothetical posed by the ALJ to the VE and the reasoning of his decision shows that he adequately considered plaintiff's moderate difficulties in concentration, persistence, and pace. The ALJ asked the VE to

> assume an individual of the claimant's age, education and work experience, and assume the following residual functional capacity: [l]ight work, which is low in stress, and by low in stress, I mean, work requiring only routine repetitive tasks, only occasional judgment, decision making and workplace changes. Only occasional interaction with the public, coworkers and supervisors . . . would there be jobs that could be performed?

(R. 38.) The ALJ's use of the phrases "low in stress" and "work requiring only routine repetitive tasks" in his hypothetical shows that he adequately considered plaintiff's impairments in task completion. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) ("an ALJ's hypothetical must include all of a claimant's impairments."); *McDonald*, 293 F. App'x at 946; *Menkes*, 262 F. App'x at 946. The ALJ's RFC for plaintiff allows her "to perform light work as defined in 20 CFR 416.967(b) except that she is limited to work which is low in stress, defined here as work: requiring only routine, repetitive tasks; only occasional judgment, decisionmaking, and workplace changes; and only occasional interaction with the public, coworkers, and supervisors. (R. 15.) References to low-stress work with routine, repetitive tasks in the RFC shows the ALJ's

full consideration of plaintiff's difficulties in concentration, persistence, and pace. The ALJ also reasoned in his decision that "out of an abundance of caution, the undersigned has found claimant's affective disorder to be severe and appropriate limitations have been added to the residual functional capacity assessment adopted in this decision." (R. 16.) The ALJ's hypothetical to the VE, his RFC determination, and the reasoning in his decision demonstrates his full consideration of plaintiff's difficulties in completing tasks.

Plaintiff highlighted two non-binding cases from the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") that she believes show that the ALJ, through his hypothetical and RFC determination, did not adequately consider her task completion limitations. These cases are distinguishable. In *Varga v. Colvin*, there were no references to stress in the hypothetical asked to the VE or in the RFC. 794 F.3d 809, 812–13 (7th Cir. 2015). The hypothetical asked in *Yurt v. Colvin* did not limit Yurt "to low stress positions or otherwise capture his moderate difficulties understanding and remembering instructions or performing activities within a schedule." 758 F.3d 850, 858 (7th Cir. 2014). While the Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace," *id.* at 858–59, it does not mandate such a result in this case.

Plaintiff's citation to a case from the United States Court of Appeals for the Third Circuit ("Third Circuit") also does not compel a result in her favor. The Third Circuit decided in *Ramirez v. Barnhart* that a hypothetical limiting a claimant to jobs with one- or two-step tasks did not adequately account for a claimant who often suffers from concentration, persistence, or pace deficiencies. 372 F.3d at 554. *Ramirez* is also distinguishable because the ALJ in this case

14

explicitly limited plaintiff to low-stress positions with routine tasks and only occasional interactions with the public rather than issuing a blanket statement limiting claimant to one- or two-step tasks. (R. 15, 38.)

In conclusion, the record and persuasive Third Circuit authority shows that the ALJ's hypothetical and RFC determination reflected plaintiff's moderate difficulties with concentration, persistence, and pace.

*2. The ALJ Used Proper Methods to Assess Plaintiff's Credibility*

Substantial evidence supports the ALJ's assessment of plaintiff's credibility. It is an ALJ's responsibility to determine whether a claimant's testimony is credible. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), *abrogated on other grounds by* 20 C.F.R. § 404.1527(e)(2)(i). Plaintiff argues that an ALJ must consider seven factors when evaluating a plaintiff's credibility. (Docket No. 14 at 8–9); 20 C.F.R. § 416.929(c)(3)(i–vii). These factors are: (i) daily activities; (ii) location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of medications taken; (v) treatment besides medication for pain relief and other symptoms; (vi) measures used by claimant to relieve pain or other symptoms; and (vii) other factors regarding functional limitations and restrictions from pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i–vii). These seven factors are considered "other evidence"; ALJ's must also consider "objective medical evidence" when determining how pain and other symptoms limit a claimant's ability to work. 20 C.F.R. § 416.929(c)(2–3).

Plaintiff overemphasized the ALJ's consideration of plaintiff's daily-living activities while not highlighting the ALJ's reasoning as to other forms of credibility evidence. The ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not completely credible. (R. 15.) He acknowledged that plaintiff could

15

care for her personal hygiene, perform household chores, drive, and make simple meals. (R. 16.) But he also highlighted plaintiff's testimony, in which she rated her back pain as a six out of ten, indicating moderate severity. (R. 16.) She never had spinal surgery and medical imaging only showed degenerative changes in her lumbar spine. (R. 16.) His review of the record showed no "severe sensor, motor, or reflex loss" and that plaintiff did not receive formal physical therapy even though she had medical insurance. (R. 16.) Her record did not show "current ongoing treatment" for her hypertension and hyperlipidemia or "significantly limiting symptoms" caused by those conditions. (R. 16.) After acknowledging plaintiff's complaint that she cries very easily for no reason and her prescription for an antidepressant, he highlighted her hearing testimony that her mental-health-related symptoms were well controlled with medication and that she never had a referral or sought professional mental health treatment. (R. 16.)

Her medical record indicates instances when medication or other methods provided relief for plaintiff's back pain. Vandrak wrote that plaintiff's "use of Percocet provide[d] manageable pain levels." (R. 262.) On May 21, 2013, the Jameson Hospital emergency room provided plaintiff with Medrol and Dilaudid, which reduced her pain. (R. 272.) She sometimes applies ice and heat and exercises recommended by a doctor to reduce her pain. (R. 29.) She also uses a cane about every two or three weeks; Vandrak prescribed the cane. (R. 32.) When she has back spasms, she receives some relief from lying down on the floor with a pillow under her back. (R. 33.) The ALJ adequately considered the factors at 20 C.F.R. § 416.929(c)(3)(i–vii) in conjunction with the record and drew a justifiable credibility conclusion.

Plaintiff's attempt to discredit the ALJ for not considering "the overlay between . . . [her] physical and mental health symptoms" (Docket No. 14 at 11) is not persuasive. Plaintiff cited *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004), for the proposition that an ALJ must

16

consider the relationship between physical and psychological symptoms since "[p]ain and psychological symptoms may often exacerbate each other, causing a positive feedback loop." (Docket No. 14 at 11.) However, Carradine had a psychosomatic disorder causing physical pain to occur from a psychological source. *Carradine*, 360 F.3d at 754. The Seventh Circuit in *Carradine* reversed the Commissioner because the Commissioner concluded that Carradine's psychosomatic disorder "implies she exaggerates the severity of symptoms she reports." *Id.* at 754, 756. Plaintiff's medical records do not contain evidence that she suffers from a psychosomatic disorder. *Carradine* is distinguishable.

Therefore, the ALJ's credibility assessment of plaintiff will be upheld.

> 3. *Substantial Evidence Supports the ALJ's Decision Giving Minimal Weight to the Consultative Examining Physician's Opinion*

The ALJ properly ascribed minimal weight to the consultative examining physician's opinion. Typically, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason*, 994 F.2d at 1067. This is because treating physicians' opinions "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Rocco*, 826 F.2d at 1350. Treating physicians' opinions are not unassailable. An ALJ may reject a treating physician's opinion when it is based on "contradictory medical evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). When weighing the medical opinions of treating versus non-treating physicians, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Id.* The ALJ "must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Id.* An ALJ's "own credibility judgments, speculation or lay opinion" is not sufficient to reject a treating physician's opinion. *Id.* "[A]n ALJ may not make speculative

17

inferences from medical reports." *Plummer*, 186 F.3d at 429. "The ALJ must consider all the evidence and give some reason for discounting the evidence []he rejects." *Id.* (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)).

Here, the ALJ gave minimal weight to the opinion of consultative examination physician Dr. Rezk because "the limitations [he] found . . . are apparently based on face value acceptance of claimant's subjective complaints rather than on any objective findings." (R. 17.) The ALJ then assigned great weight to the state agency physician's opinion because "it is supported by the preponderance of the evidence as a whole and is not incongruous with" the ALJ's RFC assessment. (R. 17.) Plaintiff argues that the ALJ erred in giving little weight to Rezk's opinion, stating that "the ALJ's assertion that Dr. Liedke's[1] assessment was based solely on Plaintiff's subjective complaints is totally unfounded."

The ALJ's analysis is terse but not so conclusory or speculative that his reasoning for ascribing little weight to Rezk's opinion is impossible to review. The ALJ criticized Rezk's opinion of plaintiff's limitations because it was based on face value acceptance of claimant's subjective complaints rather than on any objective findings." (R. 17.) In other words, the ALJ believes that plaintiff's limitations, as assessed by Rezk, contradict objective medical evidence Rezk observed. It is acceptable for an ALJ to reject a treating physician's opinion when it is based on "contradictory medical evidence." *Morales*, 225 F.3d at 317.

Rezk used checkbox forms to evaluate plaintiff's occupational limitations. Such forms are "weak evidence at best." *Mason*, 994 F.2d at 1065. Rezk indicated that plaintiff could lift

---

[1] The ALJ gave little weight to Rezk's opinion and did not discuss Dr. Liedke's opinion. (R. 7.) Dr. Liedke evaluated plaintiff for disability on September 20, 2012, which is before she filed the application for SSI at issue here. (R. 18, 230.) It follows that Dr. Liedke's opinion corresponded with a prior application for SSI by plaintiff. Dr. Rezk provided his opinion on October 23, 2013, which occurred after plaintiff filed her current application for SSI. (R. 18, 288.)

18

and carry items up to five pounds occasionally. (R. 292.) He also checked boxes showing that plaintiff could sit for two hours at once, stand for one hour at once, and walk for fifteen minutes at once. (R. 293.) Rezk marked other boxes showing that plaintiff could sit for six hours, stand for two hours, and walk for thirty minutes in an eight-hour day. (R. 293.) Taking Rezk's analysis at face value, it appears Plaintiff could work an eight-hour day. Rezk showed that plaintiff could reach, handle, finger, feel, and push or pull with both of her hands frequently and could operate foot controls with either hand occasionally. (R. 294.) Rezk checked other boxes showing plaintiff could never climb ladders or scaffolds but could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (R. 295.)

Rezk's medical opinion contained objective findings. For the most part, plaintiff had full ranges of motion. (R. 299–300.) However, her forward flexion was eighty out of one-hundred degrees on both hips and her spinal flexion-extension was eighty out of ninety degrees. (R. 300.) Rezk's physical examination revealed tender areas on both sides of plaintiff's lumbar spine. (R. 290.) She showed positive leg raise tests at sixty degrees while lying flat and ninety degrees when sitting up. (R. 290.) On plaintiff's neurological system, Rezk wrote:

> she has normal power and sensation. She has negative Babinski sign. There is no hyperflexia. There is no muscle atrophy. The patient is able to get on and off examination table and chair without support. She has normal gait. She is able to walk on toes and heels. She is able to squat and arise from the squatting.

(R. 290.) Rezk also observed the disc bulge in plaintiff's MRI from October 15, 2013. (R. 290.) Rezk concluded that plaintiff had low back pain with degenerative changes, depression, hypertension, and no signs of radiculopathy. (R. 290.)

It is understandable why the ALJ concluded that Rezk relied more on plaintiff's subjective complaints than plaintiff's objective medical condition. Rezk's conclusions as to plaintiff's neurological status appear relatively benign, even when considering plaintiff's disc

bulge and lower back pain. (R. 290.) Despite these objective findings from a physical examination (R. 289–90), Rezk checked boxes indicating great limitations in plaintiff's ability to lift or carry objects or perform postural activities like stooping or kneeling. (R. 292, 295.) While the ALJ should have expanded upon his reasoning for giving minimal weight to Rezk's medical opinion,[2] the ALJ had a basis to conclude that plaintiff's subjective complaints influenced Rezk's conclusions far more than his objective, physical examination of her. (R. 17.) The ALJ thus acted properly in weighing Rezk's opinion.

### C. Conclusion

Based on the foregoing, substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. (R. 18.) Therefore, the Court should grant Commissioner's motion for summary judgment (Docket No. 17), deny plaintiff's motion for summary judgment (Docket No. 13), and affirm the ALJ's March 12, 2015, decision. (R. 18.)

Within fourteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have fourteen days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: 5/9/17                                                                /s/ Robert C. Mitchell
United States Magistrate Judge

cc: All Counsel of Record

---

[2] One could consider the ALJ's lack of explanation a harmless error given that it is not outcome determinative. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("a remand is not required . . . because it would not affect the outcome of the case."). Plaintiff's medical record as a whole and the objective neurological examination notes in Rezk's report provide substantial evidence supporting the ALJ's decision to ascribe minimal weight to Rezk's opinion regarding plaintiff's occupational limitations. (R. 290, 292, 295.)